IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ERIE INSURANCE PROPERTY &
CASUALTY COMPANY, INC.,

        Plaintiff,

v.                            Civil No. 1:09CV113
                                (Judge Keeley)


CRAIG A. EDMOND, JANET EDMOND,
DREAMLAND DEVELOPMENT, LLC,
d/b/a PLEASANT DAY SCHOOLS,
LATASHA HENRY, DONNA CALANDRELLA,
CRYSTAL SMITH, and CHRISTINA
HATCHER McGERVEY,

        Defendants.


MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

I.   INTRODUCTION

In this case, the Court must decide whether the plaintiff, Erie Insurance Property & Casualty Company, Inc. ("Erie"), has a duty to defend the defendants, Craig A. Edmond ("Mr. Edmond"), Janet Edmond ("Mrs. Edmond"), and Dreamland Development, LLC, d/b/a Pleasant Day Schools ("Pleasant Day Schools") (collectively, "the underlying defendants"), in a state court action filed by Latasha Henry, Donna Calandrella, Crystal Smith, and Christina Hatcher (collectively, the "underlying plaintiffs").  For the reasons

discussed in this opinion, the Court **DECLARES** that Erie has no duty to defend its insureds in the case of <u>Henry, et al. v. Edmond, et al.</u>, No. 08-C-547 (W. Va. 17th Cir.) (dkt. no. 3-1) ("the underlying lawsuit"), and **DISMISSES** the case **WITH PREJUDICE**.

## II. FACTUAL AND PROCEDURAL HISTORY

On August 1, 2008, the underlying plaintiffs sued the underlying defendants in the Circuit Court of Monongalia County, West Virginia, claiming that, during their employment as daycare workers at Pleasant Day Schools, the underlying defendants 1) created a hostile work environment through sexual harassment, 2) engaged in retaliatory discharge, 3) wrongfully discharged them in violation of public policy, 4) intentionally or negligently inflicted emotional distress, 5) committed assault and battery, 6) falsely imprisoned them, 7) invaded their privacy, 8) breached their contracts, and 9) violated the West Virginia Wage Payment and Collection Act.

At all relevant times, Pleasant Day Schools, a limited liability company, was a named insured under a Property & Casualty Company Ultraflex Package Policy #Q39-8050037W ("the Ultraflex Policy") provided by Erie. Under the Ultraflex Policy, when a limited liability company is designated in the declarations, the

**MEMORANDUM OPINION AND ORDER**
**DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS**
**[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

company's members and managers are also insureds.  Pls.' Resp. to Def.s' M.T.D., Ex. 6, Commercial General Liability Coverage Form at 7 (dkt. no. 37-6) ("CGL Form").  Thus, as a member of Pleasant Day Schools, Mr. Edmond is an insured under the policy.  To the extent Mrs. Edmond is a member or manager of Pleasant Day Schools, she also is an insured.

The underlying lawsuit alleges that, during the time the Edmonds owned and managed Pleasant Day Schools, Mr. Edmond subjected the underlying plaintiffs to comments, touching and other inappropriate conduct of a sexually harassing and discriminatory nature.  The underlying plaintiffs contend that when they resisted this conduct Mr. and Mrs. Edmond retaliated against them.

Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. §§ 2201, 2202, et seq., Erie seeks a declaration that it has no duty to defend Pleasant Day Schools or Mr. and Mrs. Edmond in the underlying lawsuit.

### III.  LEGAL STANDARD

The Declaratory Judgment Act authorizes district courts to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201.  In the Fourth Circuit, "a declaratory judgment action is appropriate 'when the

3

judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (citing Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937) (internal citation omitted)). Here, because the entry of a declaratory judgment will resolve whether Erie has a duty to defend its insureds in the underlying lawsuit, the Court's exercise of jurisdiction over this matter is proper.

Pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), the applicable law in a diversity case such as this is determined by the substantive law of the state in which a district court sits. This includes the forum state's prevailing choice of law rules. See Klaxon Co. v. Stentor Electic Mfg. Co., 313 U.S. 487, 496-97 (1941). Here, the parties agree that the substantive law of West Virginia governs the interpretation and application of the Ultraflex Policy.

## IV. DISCUSSION

To determine whether Erie owes a duty to defend its insureds under West Virginia law, the Court must compare the pertinent

4

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

provisions of the Ultraflex Policy with the allegations in the underlying complaint.  <u>See</u> <u>Aetna Casualty & Surety Co. v. Pitrolo</u>, 342 S.E.2d 156, 160 (W. Va. 1986).  Although the Ultraflex Policy was not attached to the complaint, Erie did include it as an exhibit to its brief opposing the motion to dismiss (dkt. no. 37-6), and the parties do not dispute its authenticity.

In pertinent part, the Ultraflex Policy consists of a Commercial General Liability Coverage Form and several endorsements, including an employment-related practices exclusion ("ERP exclusion").  Section I of the Commercial General Liability Coverage Form provides coverage for Bodily Injury and Property Damage Liability ("Coverage A"), and Personal and Advertising Injury Liability ("Coverage B").  The defendants do not assert that Erie's duty to defend arises under any other coverages.

**A.    West Virginia Insurance Law**

Under West Virginia law, the "'[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law.'"  Syl. Pt. 2, <u>Tackett v. American Motorists Insurance Company</u>, 584 S.E.2d 158, 159 (W. Va. 2003) (quoting Syl. Pt. 1, <u>Tennant v. Smallwood</u>, 568 S.E.2d 10 (W. Va. 2002)).  The interpretation of an insurance contract presents legal questions

5

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

for resolution by the trial court. <u>Id.</u> (Syl. Pt. 3 (quoting Syl. Pt. 2, <u>Riffe v. Home Finders Associates, Inc.</u>, 517 S.E.2d 313 (W. Va. 1999)).

"'Where the provisions in an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.'" <u>Glenn Falls Insurance Company v. Smith</u>, 617 S.E.2d 760, 767-68 (W. Va. 2005) (quoting Syl. Pt. 3, <u>Soliva v. Shand, Morahan & Co., Inc.</u>, 345 S.E.2d 33 (W. Va. 1986) (internal citation omitted)).  On the other hand, a policy provision is ambiguous if it is "'<u>reasonably susceptible</u> of two different meanings or . . . of <u>such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning</u>.'" <u>Id.</u> at 768 (quoting Syl. Pt. 5, <u>Hamric v. Doe</u>, 499 S.E.2d 619 (W. Va. 1997) (emphasis in original)). If a policy's provisions are ambiguous, they will be construed in favor of the insured.  <u>See Horace Mann Insurance Company v. Leeber</u>, 376 S.E.2d 581, 584 (W. Va. 1988). "This principle applies to policy language on the insurer's duty to defend the insured, as well as to policy language on the insurer's duty to pay." <u>Id.</u>

## MEMORANDUM OPINION AND ORDER
## DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
## [DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

Generally, an insurer's duty to defend is broader than its duty to indemnify. <u>Id.</u> An insurer must defend its insured if a claim against the insured "could, without amendment, impose liability for risks the policy covers." <u>Bowyer v. HI-LAD, Inc.</u>, 609 S.E.2d 895, 912 (W. Va. 2004); <u>see</u> <u>also</u> Syl. Pt. 3, <u>Bruceton Bank v. United States Fid. & Guar. Ins. Co.</u>, 199 W. Va. 548, 486 S.E.2d 19, 20 (W. Va. 1997). For the duty to defend to arise, the underlying complaint need not "specifically and unequivocally make out a claim within the coverage.'" <u>Pitrolo</u>, 342 S.E.2d at 160; <u>see</u> <u>also</u> <u>Leeber</u>, 376 S.E.2d at 584. Rather, the underlying claims must be "reasonably susceptible of an interpretation" that they are covered by the insurance policy. <u>Id.</u>; <u>see</u> <u>also</u> <u>Mylan Laboratories Inc. v. American Motorists Insurance Co.</u>, 700 S.E.2d 518, 531 n.21 (W. Va. 2010). If an insurance policy covers some of the claims against an insured, the insurer must defend the covered and uncovered claims alike. <u>Leeber</u>, 376 S.E.2d at 584. Finally, a court must liberally construe any questions regarding the insurer's duty to defend in favor of the insured. <u>Pitrolo</u>, 342 S.E.2d at 160. It is pursuant to these standards that the Court compares the

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

allegations in the underlying complaint with the provisions of the Ultraflex Policy[1] to determine whether Erie has a duty to defend.

**B.    Bodily Injury and Property Damage Liability - Coverage A**

Erie argues that no coverage is available under Coverage A of the Ultraflex Policy because the underlying complaint fails to include allegations of "bodily injury" or "property damage," and also fails to allege an "occurrence." The defendants do not disagree.  For the reasons that follow, the Court finds that Erie has no duty to defend the underlying lawsuit under Coverage A.

The relevant terms of Coverage A include:

---

[1]  In the underlying lawsuit, the plaintiffs filed an amended complaint adding a claim against Mrs. Edmond for aiding and abetting, and also moved to file a second amended complaint adding claims for Pleasant Day Schools's negligent supervision or retention of Mr. Edmond, as well as a count seeking to pierce the corporate veil of Pleasant Day Schools to recover against the assets of Pinebrook Limited Liability Company, Edmond Jarrett, LLC, or Kydan Enterprices, LLC, and a count seeking a declaratory judgment as to whether Erie owes a duty to defend in that action. See (dkt. nos. 37-2 & 37-5).  The underlying complaint is otherwise identical to these amended pleadings.

No duty to defend arises under those amended pleadings, however, because none of the additional claims alleges "bodily injury" or "property damage" and none include claims for "personal or advertising injury." The Court's analysis, therefore, refers to the allegations of the first underlying complaint. See Underlying Pls.' Compl. (dkt. no. 3-1).

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

    **1.    Insuring Agreement**

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

  . . .

        b.    This insurance applies to "bodily injury" and "property damage" only if:
        1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]
        2)    The "bodily injury" or "property damage" occurs during the policy period; . . .

  . . .

CGL at 1.  The Ultraflex Policy also includes the following definitions:

        3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

. . .

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Id. at 10-11.

In the circumstances of this case, Erie's duty to defend under Coverage A would arise, if at all, only if the allegations in the underlying complaint "are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies." Syl. Pt. 3, Bruceton Bank, 486 S.E.2d at 20. These allegations, however, do not trigger Erie's duty to defend. Coverage A unambiguously applies only to "bodily injury" and "property damage" caused by an "occurrence." With the possible exception of the underlying claims for hostile work environment and negligent infliction of emotional distress, none of the claims alleged in the underlying complaint resulted from an "occurrence." See Smith v. Animal Urgent Care, Inc., 542 S.E.2d 827, 831 (W. Va. 2000) (recognizing that an "occurrence" involves non-volitional and accidental acts).

Furthermore, even if the claims of hostile work environment and negligent infliction of emotional distress in the underlying

complaint did result from an "occurrence," neither alleges the requisite "bodily injury" or "property damage." Each seeks relief solely for mental, emotional or economic injuries. See Mylan Laboratories, 700 S.E.2d at 531 (recognizing that purely economic harms do not constitute "bodily injury"); Tackett, 584 S.E.2d at 166 (allegations of mental and emotional injuries do not constitute "bodily injury"). Thus, as the parties acknowledge, no duty to defend the underlying lawsuit arises under Coverage A of Erie's Ultraflex policy.

## C.   Personal and Advertising Injury Liability - Coverage B

Next, the Court must determine whether Erie has a duty to defend the claims in the underlying lawsuit under Coverage B of its Ultraflex Policy. According to Erie, no such duty arises under Coverage B because the allegations of sexual harassment and coercion in the underlying complaint trigger the policy's exclusions for intentional injuries and employment-related practices, acts or omissions.[2]  The defendants, however, contend

---

[2]  Although Erie initially asserted that the "Criminal Acts" exclusion also precludes coverage, it has since abandoned this argument. For the Criminal Acts exclusion to apply, "criminal intent must be proven beyond a reasonable doubt[.]"  Bowyer, 609 S.E.2d at 913. On the present record, Erie cannot demonstrate the underlying defendants' intent to this degree of culpability.

**ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113**

MEMORANDUM OPINION AND ORDER
**DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

that their claims are not subject to these exclusions. Alternatively, they assert that the exclusions are ambiguous and therefore must be construed in their favor.

**1.    The Scope of Coverage B**

Unlike Coverage A, Coverage B does not require an injury resulting from an "occurrence," but rather applies to "personal and advertising injury" arising from several specified offenses.  In pertinent part, Coverage B provides:

> **1.    Insuring Agreement**
>
> a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. . . .
>
> . . .
>
> b.    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL. 1:09CV113**

MEMORANDUM OPINION AND ORDER
**DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS**
**[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

CGL Form at 4.

The Ultraflex Policy defines "personal and advertising injury" as:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:
>
> a. **False** arrest, detention or **imprisonment**;
>
> b. Malicious prosecution;
>
> c. **The wrongful** eviction from, wrongful entry into, or **invasion of the right of private occupancy of a room**, dwelling, or premises **that a person occupies**, committed by or on behalf of its owner, landlord or lessor;
>
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
>
> f. The use of another's advertising idea in your "advertisement;" or
>
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

Id. at 11 (emphasis added).

Pertinent to Coverage B, the underlying complaint alleges the following claims of "false imprisonment" and "invasion of privacy":

**COUNT EIGHT
FALSE IMPRISONMENT**

¶ 71.  Plaintiffs reallege all allegations set forth in paragraphs 1 through 70 of Plaintiffs' Complaint as if the same were fully set forth verbatim herein.

¶ 72.  Defendant Craig A. Edmond used words, actions and conduct including his physical strength, to overpower, illegally detain, and restrain Plaintiffs against their will, and/or caused Plaintiffs to be in reasonably [sic] apprehension of such restraint and detention and, thus, subjected Plaintiffs to false imprisonment.

¶ 73.  The conduct of Defendant Craig A. Edmond occurred as a result of and during the course of his employment with and ownership interest in Defendant Pleasant Day Schools and it is likewise liable for said conduct.

¶ 74.  Defendants' conduct was unlawful pursuant to the laws of the State of West Virginia.  Plaintiffs have suffered damages as a result thereof[.]

¶ 75.  Defendant's conduct was unlawful pursuant to the laws of the State of West Virginia[.] . . .

**MEMORANDUM OPINION AND ORDER**
**DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS**
**[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

**COUNT NINE**
**INVASION OF PRIVACY**

¶ 76.  Plaintiffs reallege all allegations set forth in paragraphs 1 through 75 of Plaintiffs' Complaint as if the same were fully set forth verbatim herein.

¶ 77.  Defendant's conduct constituted a tortious invasion of the privacy rights of the Plaintiffs in that Defendant Craig A. Edmond unreasonably intruded upon the seclusion of Plaintiffs.

¶ 78.  The conduct of Defendant Craig A. Edmond occurred as a result of and during the course of his employment with and ownership interest in Defendant Pleasant Day Schools and it is likewise liable for said conduct.

¶ 79.  Defendants' conduct was unlawful pursuant to the laws of the State of West Virginia.  Plaintiffs have suffered damages as a result thereof[.] . . .

Underlying Pls.' Compl. at ¶¶ 71, 76 (dkt. no. 3-1).

Counts Eight and Nine adequately plead claims for "personal and advertising injury" pursuant to Coverage B; thus, Erie would be obligated to defend its insureds in the underlying lawsuit unless these claims are excludable under the Ultraflex Policy.

**2.  Knowing Violation of Rights of Another Exclusion**

The "knowing violation of rights of another" exclusion of the Ultraflex Policy states:

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

> ### 2. Exclusions
> This insurance does not apply to:
>
> #### a. Knowing Violation Of Rights of Another
> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

CGL Form at 4. In other words, this exclusion applies if the insured acted with the knowledge that his acts would violate another's rights, and intended them to cause "personal and advertising injury." <u>Id.</u>

Importantly, under West Virginia law, a defendant's intent to cause injury to another "will be implied as a matter of law in instances of sexual misconduct," including "allegations of sexual harassment." <u>Animal Urgent Care</u>, 542 S.E.2d at 832-33. Thus, if the claims of "false imprisonment" and "invasion of privacy" alleged in the underlying complaint are predicated on instances of sexual misconduct or harassment by Mr. Edmond, the "knowing violation of rights of another" exclusion would apply and extinguish Erie's duty to defend.

Erie emphasizes that the claims of "false imprisonment" and "invasion of privacy" in the underlying complaint incorporate all of the allegations preceding them, which, among others, include:

> ¶ 11.   Immediately upon the formation of Dreamland Development, LLC and Mr. and Mrs. Edmond taking over the ownership and management of the day care facility and the supervision of its employees, the employees at the facility began to experience on a daily basis inappropriate comments, inappropriate touching, and other inappropriate conduct from Mr. Edmond directed at the employees and sometimes involving the children at the center.
>
> . . .
>
> ¶ 19.  Plaintiffs were aware of and subject to the unwelcome sexual advances toward other employees by Defendant Craig A. Edmond as well as his requests for sexual favors, and his exhibition of other conduct of a sexual nature that created an intimidating, hostile and offensive work environment that had the purpose and effect of unreasonably interfering with the Plaintiffs' work performance as well as that of other employees.

Underlying Pls.' Compl. at ¶¶ 11, 19 (dkt. no. 3-1). According to Erie, by incorporating these allegations into their claims for "false imprisonment" and "invasion of privacy," the underlying plaintiffs inextricably linked them to Mr. Edmond's alleged sexual misconduct and harassment, and, by implication, such claims establish Mr. Edmond's intent to violate the rights of the

17

underlying plaintiffs. See Animal Urgent Care, 542 S.E.2d at 832-33.

A careful review of the underlying complaint leaves no doubt that the crux of its claims of "false imprisonment" and "invasion of privacy" are based on Mr. Edmond's alleged sexual harassment and misconduct. While, admittedly, that complaint does not delve deeply into the details of the alleged "false imprisonment" and "invasion of privacy," it does unambiguously root them in Mr. Edmond's alleged sexual misconduct and harassment. See id.; accord Gordon v. Hartford Fire Ins. Co., 105 Fed. App'x 476, 483 (4th Cir. 2004) (unpublished); and Markel American Ins. Co. v. Staples, No. 3:09CV435, 2010 WL 370304, at *5 (E.D. Va. Jan. 28, 2010) (unpublished). For example, it alleges that Mr. Edmond engaged in "inappropriate touching, and other inappropriate conduct," made "unwelcome sexual advances," "request[ed] sexual favors," and exhibited "other conduct of a sexual nature." Underlying Pls.' Compl. at ¶¶ 11, 19 (dkt. no. 3-1).

The allegations of "false imprisonment" and "invasion of privacy" are sufficiently based on Mr. Edmond's alleged sexual misconduct and harassment to imply the fact that he acted intentionally and with knowledge that his actions "would violate

**MEMORANDUM OPINION AND ORDER**
**DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS**
**[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

the rights of another." CGL at 4. Under the "knowing violation of rights of another" exclusion of Coverage B, therefore, Erie has no duty to defend such claims.

### 3.   Employment-Related Practices, Policies, Acts or Omissions Exclusion

Even if the "knowing violation of rights of another" exclusion did not discharge Erie's duty to defend the underlying lawsuit, the ERP exclusion in Erie's policy would do so. According to Erie, the ERP exclusion clearly and unambiguously excludes coverage for the claims of "false imprisonment" and "invasion of privacy" because they arise out of the underlying defendants' employment-related acts, including acts of coercion, sexual harassment and humiliation. The defendants counter that no allegation in the underlying complaint establishes whether these offenses were in fact "employment-related." Alternatively, they assert that the exclusion is ambiguous.

The ERP exclusion to Coverage B appears in an endorsement to the Commercial General Liability Coverage Part, and provides:

> This insurance does not apply to:
> "Personal and advertising injury" to:
>
> a.   A person arising out of any:
>
> 1)   Refusal to employ that person;

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL. 1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

            2)    Termination of that person's employment; or

            3)    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; [ ]

. . .

This exclusion applies:

a.    Whether the insured may be liable as an employer or in any other capacity; and

b.    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Pls.' Resp. to Def.s' M.T.D., Ex. 6, Employment-Related Practices Exclusion at 1 (dkt. no. 37-6) ("ERP exclusion").

As noted earlier, Coverage B defines "personal and advertising injury" as injury arising from offenses, including "false imprisonment" and "[t]he . . . invasion of the right of private occupancy of a room, . . . or premises that a person occupies." CGL at 11. The ERP exclusion, however, states that the policy does not apply to "'personal and advertising injury' [] to a person arising out of any . . . [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation,

20

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." ERP Exclusion at 1.

Within the context of the ERP exclusion, therefore, even when an insured commits an offense giving rise to "personal and advertising injury," coverage is not available if the acts giving rise to such an offense qualify as an "employment-related" practice, policy, act or omission.[3] Given this, if an insured commits acts giving rise to "personal and advertising injury," the question becomes whether these acts fall within the ambit of the ERP exclusion.

Courts addressing policies containing this exclusion are divided about whether the language of the exclusion is ambiguous when applied to claims for false imprisonment, false arrest or invasion of privacy.[4] Their disagreement focuses on the breadth of

---

[3]    In <u>Perkins v. Maryland Casualty Company</u>, 388 Fed. App'x 641, 643 (9th Cir. 2010) (unpublished), Judge Tashima, writing in dissent, recognized that a court analyzing an ERP exclusion should not conflate "the <u>offenses</u> that broadly define the policy's coverages and exclusions with the <u>acts</u> that give rise to those offenses." (emphasis in original).  He also noted that, where a policy's "inclusionary and exclusionary provisions speak in terms of offenses," the ERP exclusion "uses acts that give rise to those offenses as the means of qualifying the precise circumstances under which coverage does or does not exist."  <u>Id.</u>

[4]    <u>Compare</u> <u>LDF Food Group, Inc. v. Liberty Mutual Fire Insurance Company</u>, 146 P.3d 1088, 1095 (Kan. App. 2006) (holding

**ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113**

**MEMORANDUM OPINION AND ORDER**
**DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS**
**[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

the phrase "arising out of any . . . employment-related practices,

policies, acts or omissions."

---

under Kansas law that an ERP exclusion precluded coverage for invasion of privacy, false imprisonment and defamation); <u>Capitol Indemnity Corporation v. 1405 Associates, Inc.</u>, 340 F.3d 547, 550 (8th Cir. 2003) (holding under Missouri law that an ERP exclusion precluded coverage for false arrest, false imprisonment and slander); <u>Cornett Management Company, LLC v. Fireman's Fund Insurance Company</u>, 332 Fed. App'x 146, 149 (4th Cir. 2009) (unpublished) (holding under West Virginia law that an ERP exclusion precluded coverage for false imprisonment when a manager's acts "clearly ha[d] an effect on the employment relationship," and when the complaint included allegations of "<u>intentional</u> coercion, harassment, and humiliation." (emphasis in original)); <u>Auto-Owners Insurance Company v. Childersburg Banccorporation, Inc.</u>, No. CV-97-PT-2952-E, 1998 WL 1802908 (N.D. Ala. May 27, 1998) (unpublished) (holding that an ERP exclusion precluded coverage for various sexual harassment-related claims) <u>with</u> <u>HS Services, Inc. v. Nationwide Mutual Insurance Company</u>, 109 F.3d 642, 657 (9th Cir. 1997) (holding under California law that an ERP exclusion did not apply because the acts forming the basis for a defamation claim did not "arise out of" an employment relationship); <u>Peterborough Oil Company, Inc. v. Great American Insurance Company</u>, 397 F. Supp. 2d 230, 243 (D. Mass. 2005) (holding under Massachusetts law that an ERP exclusion was ambiguous as applied to a claim for malicious prosecution and that it did not preclude coverage); <u>Zurich Insurance Company v. Smart & Final Inc.</u>, 996 F. Supp. 979, 988 (C.D. Cal. 1998) (holding under California law that an ERP exclusion was ambiguous as applied to a claim for false imprisonment and that it did not preclude coverage); <u>Acuity v. North Central Video, LLLP</u>, No. 1:05-CV-010, 2007 U.S. Dist. LEXIS 33540, at *53-*54 (D.N.D. May 7, 2007) (unpublished) (holding under North Dakota law that an ERP exclusion was ambiguous as applied to claims for false imprisonment and that it did not preclude coverage); <u>Barnes v. Employers Mutual Casualty Company</u>, 1999 Tenn. App. LEXIS 354, at *9-*10 (Tenn. App. June 8, 1999) (unpublished) (holding under Tennessee law that an ERP exclusion was ambiguous as applied to a malicious prosecution claim and that it did not preclude coverage for that claim).

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

Courts adopting a narrow reading of this phrase have concluded that, although the term "employment-related" could be read broadly to apply to every act related to an employee, the better view is to read it more narrowly as applying only to personnel-related acts. In <u>Peterborough Oil Company, Inc. v. Great American Insurance Company</u>, for example, that court held that the text of the exclusion suggests the phrase refers "to matters that directly concern the employment relationship itself, such as the demotion, promotion, or discipline of employees by employers, and tortious acts that may accompany such personnel decisions, such as discrimination, harassment, or defamation." 397 F. Supp.2d at 238. The court also noted that "[a] corporate employer can only act through human agents, principally its employees," and that "[i]f every injury arising out of an act that somehow related to an employee were to be excluded, the exclusion would effectively swallow the coverage.  The term is therefore necessarily narrower." <u>Id.</u> at 238.

Similarly, in <u>Acuity v. North Central Video, LLLP</u>, the court reasoned that, had the drafters of the exclusion intended to "exclude coverage for employer acts or omissions directed to an employee and occurring during the course of employment," they could

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

have used more general language exempting all injuries suffered by employees arising out of the insured's acts. 2007 U.S. Dist. LEXIS 33540, at *38-*39. Instead, the ERP exclusion at issue contained only a narrow range of personnel-related acts. Id. at *40 (citing Peterborough Oil, 397 F. Supp.2d at 238-39).

Because the exclusions at issue in Peterborough Oil and Acuity plausibly supported either a broad or narrow reading, the courts reviewing those exclusions concluded that they were ambiguous and rejected the broad reading urged by the insurers. Peterborough Oil., 397 F. Supp.2d at 243; Acuity, 2007 U.S. Dist. LEXIS 33540, at *53-*57.

Courts adopting a broad reading of the phrase have found the language of ERP exclusions to be unambiguous. In Capitol Indemnity Corporation v. 1405 Associates, Inc., for example, the Eighth Circuit held that, under Missouri law, the term "arising out of" means "'originating from,' or 'having its origins in' or 'growing out of' or 'flowing from.'" 340 F.3d at 550 (quoting Colony Ins. Co. v. Pinewood Enters., Inc., 29 F. Supp.2d 1079, 1083 (E.D. Mo. 1998)). Because the claims of false imprisonment and false arrest at issue in the case "arose out of" employment with the insured, the Eighth Circuit applied the ERP exclusion. Id. at 550-51.

## MEMORANDUM OPINION AND ORDER
## DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
## [DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

Significantly, in Cornett Management Company, LLC v. Fireman's Fund Insurance Company, a case that arose under West Virginia law, the Fourth Circuit read an ERP exclusion broadly.  332 Fed. App'x at 148.   In Cornett, the manager of a Hooters franchise in Charleston, West Virginia, informed two female employees that a customer had reported a theft and told them to receive instructions from a male police officer on the telephone.  The male voice then "commanded the women to strip naked in front of the manager, threatening them with a humiliating arrest if they failed to comply."  Id.  The women followed these instructions and only later learned that the telephone call was a prank.

As a result, seven female employees filed a lawsuit alleging sexual harassment against Cornett Management Company, LLC ("Cornett"), the owner of the Charleston Hooters franchise.  Id. at 147.   Their amended complaint included a claim of false imprisonment based on the strip searches.  Cornett settled the lawsuit and received reimbursement for defense and settlement costs from Lexington Insurance Company up to the available coverage limits.  Id.  It then sought additional reimbursement from a second insurer, the Fireman's Fund Insurance Company ("Fireman's Fund"). Id.

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

When Fireman's Fund declined to cover the claim, Cornett sued it in state court. Fireman's Fund then removed the case to federal court and sought summary judgment on the basis that the policy's ERP exclusion excluded coverage for all the claims filed by Cornett's employees. Judge Stamp of this Court agreed and granted summary judgment. See Cornett Management Co., LLC v. Lexington Ins. Co., et al., No. 5:04CV22, 2006 WL 898109, at *10 (N.D.W. Va. Mar. 31, 2006) (unpublished) (Stamp, J.).

On appeal, the Fourth Circuit affirmed, reasoning that the underlying complaint "clearly allege[d] acts by a Hooters manager that involved intentional coercion, harassment, and humiliation of two female employees who were strip searched." Cornett Management, 332 Fed. App'x. at 149 (emphasis in original). Because those acts would "clearly have an effect on the employment relationship," they qualified as "employment-related" acts under the ERP exclusion. Id. In so ruling, however, the Fourth Circuit also noted that, under West Virginia law, the ERP exclusion would only apply where an employer "intends to cause coercion, humiliation, or harassment." Id. at 149 n.3 (citing Bowyer, 609 S.E.2d at 913).

26

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL. 1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

### 4. No Duty to Defend Under the ERP Exclusion

The scope of the ERP exclusion in Erie's policy is broad enough to include acts clearly having an effect on the employment relationship:

> This insurance does not apply to . . . "[p]ersonal and advertising injury" to . . . [a] person arising out of any . . . [e]mployment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person[.]

ERP Exclusion at 1 (dkt. no. 37-6).

In the underlying lawsuit, the claim of "false imprisonment" alleges that Mr. Edmond

> used words, actions and conduct including his physical strength, to overpower, illegally detain, and restrain Plaintiffs against their will, and/or caused Plaintiffs to be in reasonably [sic] apprehension of such restraint and detention and, thus, subjected Plaintiffs to false imprisonment.

See Underlying Pls.' Compl. at ¶ 72 (dkt. no. 3-1). Similarly, the claim of "invasion of privacy" alleges that the

> [d]efendant's conduct constituted a tortious invasion of the privacy rights of the Plaintiffs in that Craig A. Edmond unreasonably intruded upon the seclusion of the Plaintiffs.

Id. at ¶ 77. Importantly, both claims allege that

> [t]he conduct of Defendant Craig A. Edmond
> occurred as a result of and during the course
> of his employment with and ownership interest
> in Defendant Pleasant Day Schools and it is
> likewise liable for said conduct.

See Underlying Pls.' Compl. at ¶¶ 73, 78 (dkt. no. 3-1). Because these offenses allegedly occurred during the course of Mr. Edmond's employment with Pleasant Day Schools, they undoubtedly arose out of employment-related acts that affected the employment relationship, and therefore would fall within the broad scope of the ERP exclusion.

That conclusion does not end the analysis under West Virginia law, however. Erie also must establish that its insureds intended to commit the employment-related acts giving rise to the personal or advertising injury offenses. Cornett Management, 332 Fed. App'x. at 149 n.3 (citing Bowyer, 609 S.E.2d at 913). This limitation "prevents the exclusion from applying to all acts done by an employer or impacting an employee, a broad interpretation that has led some courts to find the provision ambiguous." Id. (citing Acuity, 2007 WL 1356919, at *14-15, *19; and Peterborough Oil, 397 F. Supp.2d at 238-39).

As pleaded, the claims in the underlying complaint for "false imprisonment" and "invasion of privacy" are reasonably susceptible

**ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113**

**MEMORANDUM OPINION AND ORDER**
**DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS**
**[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE**

to the interpretation that they resulted from Mr. Edmond's alleged sexual misconduct and harassment. Thus, as a matter of law, Mr. Edmond impliedly knew that his acts violated the rights of the underlying plaintiffs, and therefore committed them intentionally. See Animal Urgent Care, 542 S.E.2d at 832-33.

Even if such intent and knowledge were not implied, however, by its very nature a claim for "false imprisonment" is intentional under West Virginia law. See Allen v. Smith, 368 S.E.2d 924, 927 (W. Va. 1988); Harless v. First Nat. Bank in Fairmont, 289 S.E.2d 692 (W. Va. 1982) (citing Jones v. Hebdo, 106 S.E. 898 (W. Va. 1921)); and Riffe v. Armstrong, 477 S.E.2d 535, 552 (W. Va. 1996) (recognizing that, to state a claim for false imprisonment under West Virginia law, a plaintiff must establish "(1) the detention of the person, and (2) the unlawfulness of the detention and restraint."). Thus, to prevail on such a claim, the underlying plaintiffs must establish that Mr. Edmond's acts were intentional.[5]

---

[5] Even in jurisdictions recognizing the tort of "negligent false imprisonment," the claim must result from intentional acts. See, e.g., Lyons v. Fire Ins. Exchange, 74 Cal. Rptr.3d 649, 655 (Cal. App. 2008) (citing Restatement (Second) of Torts, § 35)). Under either form of "false imprisonment," intentional acts are involved.

Similarly, to prevail on a claim for "invasion of privacy" under West Virginia law, a plaintiff must establish that a defendant intentionally intruded upon the seclusion of another. See Greenfield v. Schmidt Baking Co., Inc., 485 S.E.2d 391, 404 (W. Va. 1997) (quoting Syl. Pt. 8, Crump v. Beckley Newspapers, Inc., 320 S.E.2d 70 (1983)); Restatement (Second)of Torts, § 652B ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."). Thus, the underlying plaintiffs must establish that Mr. Edmond intentionally intruded upon their seclusion.

Inasmuch as the acts of Mr. Edmond allegedly giving rise to the underlying claims of "false imprisonment" and "invasion of privacy" were "employment-related" and intentional in nature, they fall within the ambit of the ERP exclusion of Erie's Ultraflex Policy.

### V.   CONCLUSION

For the reasons discussed, the Court **DECLARES** that Erie owes no duty of defense to its insureds in the case of Henry, et al. v.

ERIE INS. PROP. & CASUALTY CO., INC. V. EDMOND, ET AL.  1:09CV113

MEMORANDUM OPINION AND ORDER
DECLARING THAT PLAINTIFF HAS NO DUTY TO DEFEND ITS INSUREDS
[DKT. NO. 3], AND DISMISSING CASE WITH PREJUDICE

Edmond, et al., No. 08-C-547 (W. Va. 17th Cir.) (dkt. no. 3-1), and

**DISMISSES** this case **WITH PREJUDICE**.

It is so **ORDERED**.

The Court directs the Clerk to enter a separate judgment order in favor of the plaintiff, Erie Insurance Property & Casualty Company, Inc., and to transmit copies of both orders to counsel of record.

DATED: March 25, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE